NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

|  |  |
|---|---|
| JOSEPH DEMORATO and JOSEPH DELGALDO, | : |
| Plaintiffs, | : |
| v. | : |
| CARVER BOAT CORPORATIONS, STATEN ISLAND BOAT SALES, INC., and RICHARD CURRY | : |
| Defendants. | : |

CIVIL ACTION NO. 06-240 (JAP)

**OPINION**

---

PISANO, District Judge.

Before the Court is Defendant Carver Boat Corporation's motion for summary judgment under Federal Rule of Civil Procedure 56. Also before the Court is Defendant Staten Island Boat Sales, Inc.'s and Defendant Richard Curry's motion for summary judgment under Federal Rule of Civil Procedure 56. Plaintiffs Joseph Demorato and Joseph Delgaldo oppose Defendants' motions. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. The Court decides this motion without oral argument as permitted by Fed. R. Civ. P. 78. For the reasons set forth below, the Court grants summary judgment in favor of the Defendants and dismisses Plaintiffs' complaint in its entirety.

## I.    Background

On or about August 12, 2004, Plaintiffs Joseph Demorato ("Demorato") and Joseph Delgaldo ("Delgaldo"), who are business partners, purchased a boat from Defendant Staten

Island Boat Sales ("SIBS"), a New York based independent boat dealer.  Plaintiff Delgaldo had previously purchased a boat from SIBS, and he returned to SIBS after deciding to upgrade to a larger boat.

The purchase price of the boat was $994,500.00.  The boat was manufactured by Defendant Carver Boat Corporation ("Carver"), which has its principal place of business in Wisconsin.  Carver had sold the boat to SIBS in or about December 2003.  Carver was not a party to the sales contract between SIBS and Plaintiffs.  However, Carver provided its express limited warranty to Plaintiffs in connection with its manufacture and sale of the boat.

The boat was still on "blocks" and was not fully commissioned and ready for delivery at the time of the sale.  Plaintiffs were aware that several "punch list" repairs and work needed to be done before the boat would be ready for delivery.  Further, Plaintiff had SIBS perform over $98,000,00 in aftermarket installations and modification to the boat.

Plaintiff allege that the boat was subject to repeated repair and was out of service for over 80 days following the sale.  Plaintiffs claim that the boat continues to have numerous problems despite such repairs.  Specifically, Plaintiffs allege that the boat has serious vibration problems, as well as numerous other construction and electrical defects.  Plaintiffs had the boat surveyed to determine its condition, including the need for further repairs and the boat's overall seaworthiness.

On November 29, 2005, Plaintiffs filed a complaint against Defendants Carver, SIBS, and Richard Curry ("Curry")[1] in the Superior Court of New Jersey, Law Division.  The complaint sets

---

[1]     Curry is a salesperson employed by SIBS and was the individual involved in the sale of the boat.

forth claims against the Defendants for consumer fraud, negligence, breach of warranty of fitness

for a particular purpose, breach of implied warranty of merchantability, breach of express

warranty, and breach of contract.  The complaint also alleges a violation of the Magnuson-Moss

Act, 15 U.S.C. § 2301 *et seq.*

Defendant Carver removed the matter to this Court pursuant to 28 U.S.C. § 1441 on

January 18, 2006.[2]  Defendants SIBS and Curry consented to removal.  Defendants now move for

summary judgment on all of Plaintiffs' claims.

## II.   Choice of Law

Plaintiffs and Defendants dispute whether New Jersey or New York law should apply in

this litigation.  Because both New Jersey and New York appear to have some interest in having

their law applied, the Court must determine which state's law governs each of Plaintiffs' state

law claims.

A federal district court sitting in diversity or exercising supplemental jurisdiction over

state law claims must apply the choice of law rules of the state in which it sits.  *Gluck v. Unisys

Corp.*, 960 F.2d 1168, 1179 n. 8 (3d Cir. 1992).  Therefore, the Court will apply New Jersey

choice of law principles in determining which law governs Plaintiffs' claims.

The New Jersey Supreme Court has adopted the approach of the Restatement (Second) of

Conflict of Laws to determine which state's law governs in contract cases.  *State Farm Mut.

Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 34 (1980).  Under this approach, the law of the

state having the most significant relationship to the parties and the transaction is to control.

---

[2]      The  Court's original jurisdiction is grounded on federal question jurisdiction, 28
U.S.C. § 1331, by virtue of Plaintiffs' Magnuson-Moss Act claim.

*Restatement (Second) of Conflict of Laws* § 188 (1971).  Among the factors to be considered are: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.  *Id.*

Applying these factors, the Court finds that New York has the more significant relationship with the parties and this transaction.  New Jersey's only contacts are Plaintiff Delgaldo's residence in New Jersey, the boat's registration in New Jersey, and the fact that the boat has been used in New Jersey.[3]  The following undisputed facts, however, constitute significant contacts with New York: the contract for the sale of the boat was negotiated, executed, and performed in New York; the boat was delivered in New York; payment for the boat was made in New York; Plaintiff Demorato is a resident of New York; and Defendant SIBS has its principal place of business in New York.  Additionally, the boat is currently being docked at a marina in Staten Island, New York.  Further, Plaintiffs indicated on their warranty registration that the boat's primary port would be Staten Island, New York.  It is clear from these facts that New York has more significant contacts than New Jersey.  Therefore, the Court will apply New York law to Plaintiffs' state law claims in this case.

## III.   <u>Legal Standard</u>

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that

---

[3]     SIBS also has an office in New Jersey.  That office, however, was not involved in the sale of the boat to Plaintiffs.

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The substantive law governing the dispute will determine which facts are material and only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Simmerman v. Corino*, 804 F.Supp. 644, 649 (D.N.J. 1992) (quoting *Anderson*, 477 U.S. at 248).

If the moving party can show that no genuine issue of material fact exists, the burden then shifts to the non-moving party to present evidence that a genuine issue of fact exists. *Celotex Corp.*, 477 U.S. at 324. In determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan*, 122 F.3d 171, 176-177 (3d Cir. 1997). "[A]n opponent may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence." *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Summary judgment should be granted "unless the party opposing the motion provides evidence such that a reasonable jury could return a verdict in favor of the nonmoving party." *Hargrave v. County of Atlantic, et al.*, 262 F.Supp.2d 393, 410 (D.N.J. 2003) (internal quotations and citations omitted). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

5

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In making this determination, the Court shall not "weigh the evidence and determine the truth of the matter," but only needs to determine whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. In order to satisfy this standard, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita*, 475 U.S. at 586-87 (citations omitted). Instead, the non-moving party must prove beyond a "mere scintilla" of evidence that a genuine issue of material fact exists. *Big Apple BMW*, 974 F.2d at 1363. Similarly,"[a]n otherwise properly supported motion for summary judgment will not be defeated by the mere existence of some factual dispute between the parties," unless the dispute over those facts may affect the outcome of the lawsuit. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995).

The non-moving party may not simply rest on its pleadings, *Celotex Corp.*, 477 U.S. at 324, nor may it rest on mere allegations, *Anderson*, 477 U.S. at 243. Likewise, "a party cannot rely upon self-serving conclusions, unsupported by specific facts in the record." *Laresca v. Am. Tel. & Tel.*, 161 F.Supp.2d 323, 327 (D.N.J. 2001) (citing *Celotex Corp.*, 477 U.S. at 322-23). Unsworn arguments of counsel and "unsupported allegations in [the non-moving party's] memorandum or pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rather, the party opposing summary judgment must present actual, admissible evidence that establishes a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324, *Anderson*, 477 U.S. at 243, *Lujan*, 497 U.S. at 888-89.

IV.   **Analysis**

A.   **Breach of Contract Claim**

Plaintiffs allege that Defendants breached their contractual obligations to Plaintiffs. (Compl. ¶ 29).  The elements of a breach of contract claim under New York law are (1) formation of a contract between plaintiff and defendant; (2) performance by the plaintiff; (3) defendant's failure to perform; and (4) resulting damage.  *See Marks v. New York Univ.,* 61 F.Supp.2d 81, 88 (S.D.N.Y. 1999).

The Court grants summary judgment to SIBS and Curry on Plaintiffs' breach of contract claim.  A contract for the sale of the boat was clearly formed between Plaintiffs and SIBS.  The Court finds, however, that neither SIBS or Curry breached any contractual obligation to Plaintiffs.  The contract provided for the sale of the boat at a designated price, and SIBS delivered the boat to Plaintiffs at that price.  Thus, Plaintiffs cannot establish a breach of contract claim against SIBS or Curry.

The Court will also grant summary judgment to Carver on Plaintiffs' breach of contract claim.  Carver was not a party to the contract for the sale of the boat.  *See* Purchase Agreement between Joseph Delgaldo and Staten Island Boat Sales, Inc. ("Purchase Agreement"), attached to the certification of Edward J. Fanning, Jr. ("Fanning cert.") as Exhibit 4.   Nor was Carver in contractual privity with Plaintiffs.  *See Le Barte v. Seneca Resources Corp.*, 285 A.D.2d 974, 975 (N.Y. App. Div. 2001) (holding that one may not maintain an action for breach of contract against a party with whom it is not in privity).  Thus, Plaintiffs' breach of contract claim must be dismissed against Carver.

B.      **Express Warranty Claim**

Plaintiffs seek damages for breach of express warranty.  Plaintiffs allege that Defendants "have failed to properly repair the vessel within the terms of the [express] warranty, and have offered repairs whose purpose was to obfuscate or conceal serious problems."  (Compl. ¶ 27).  They further allege that Defendants "made affirmations of fact and promises, a description of the goods, and exhibited a sample or model concerning the vessel automobile which became part of the basis of the bargain and constituted express warranties."  (Compl. ¶ 28).

Breach of warranties on purchased goods are governed by the New York Uniform Commercial Code (hereinafter "UCC").  New York has adopted the Uniform Commercial Code, which applies to transactions for the sale of goods, verbatim by statute.

1.      **SIBS and Curry**

Defendants SIBS and Curry contend that Plaintiffs' breach of express warranty claim should be dismissed against them, as the contract clearly excluded any express warranties.  They argue that Plaintiffs' sole remedy for warranty repairs were those provided by Defendant Carver under its warranty program.

In accordance with U.C.C. § 2-316, a contract can exclude express warranties.  *See Gale v. Kessler*, 93 A.D.2d 744, 744 (N.Y. App. Div. 1983) (stating that a contract can exclude express warranties in accordance with U.C.C. § 2-316); *Con Tel Credit Corp. v. Mr. Jay Appliances & TV, Inc.*, 128 A.D.2d 668, 668 (N.Y. App. Div. 1987) (finding that the contract properly excluded express warranties in conformity with U.C.C. § 2-316).

The sales contract between SIBS and Plaintiffs explicitly provides that the "DEALER MAKES NO WARRANTIES EXPRESS OR IMPLIED" and that "WARRANTY, IF ANY, OF

8

ANY ITEM PURCHASED HEREUNDER SHALL BE SOLELY THE WARRANTY GIVEN BY THE MANUFACTURER." *See* Purchase Agreement at ¶ 6.  The Court finds that this language clearly excludes any express warranties provided by SIBS, and thus, Plaintiffs' breach of express warranty claim must be dismissed against SIBS and Curry.

        **2.**        **Carver**

Defendant Carver moves for dismissal of Plaintiffs' claim for breach of express warranty.  Carver acknowledges that it issued its standard limited warranty to Plaintiffs, but argues that it fulfilled it warranty obligations relating to the boat.

According to Carver, the limited warranty provided information concerning Carver's warranty program, including a statement of what components were covered under the warranty, and what remedies were available if warranty defects arose.  The limited warranty provided that the exclusive remedy available under the warranty was for "repair or replacement."  The limited warranty also set forth the owner's obligations, such as returning the boat to the dealer to allow warranty repairs to be made, if warranty service was needed.

In order to prevail on their breach of express warranty claim, Plaintiffs must establish that Carver failed to perform its obligation to "repair or replace" a warranted defect.  *See* Official Comment 13, U.C.C. § 2-314 (providing that "[i]n an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken . . . .").  Carver argues that Plaintiffs cannot succeed on this claim because Carver repeatedly tendered service in fulfillment of its warranty obligations and that it is Plaintiffs' refusal to allow that service that resulted in the repairs remaining incomplete.  In response, Plaintiffs argue that Defendants have failed to properly repair the boat within the terms of the

warranty.  Specifically, they argue that the opportunity for repair of the boat has elapsed and that Carver is obligated to provide the replacement remedy under its warranty.

The Court grants summary judgment to Carver on Plaintiffs' claim that Carver breached its express limited warranty.  It is uncontroverted that Carver has made several offers to repair the boat.  Because Plaintiffs rejected these offers and did not give Carver the opportunity to comply with its express warranty, they cannot now be heard to claim its breach.  Significantly, Plaintiffs' own expert, William Burpee, testified at his deposition that any deficiencies within the boat are repairable, and if repairs are made to the boat, the boat can be used safely.  (Deposition of Willard Burpee ("Burpee dep.") at 110, attached to the Fanning cert. as Ex. 24).

The Court is unpersuaded by Plaintiffs' argument that Defendants' "opportunity to cure" elapsed.  Plaintiffs argue that the boat had been out of service for 80 days for repeated repairs immediately after Plaintiffs purchased the boat, and that Defendants should have fixed the boat when they had the opportunity to do so.  The evidence demonstrates, however, that the majority of items requiring repair during that time period were indeed fixed.  When Plaintiffs were negotiating the purchase of the boat, it was still on the "blocks" and was not fully commissioned. Plaintiffs knew that several "punch list" repairs and work needed to be done before the boat would be ready for delivery to them.  The record indicates that nearly all of the pre-delivery punch list items were satisfactorily completed.  Significantly, Plaintiffs' primary concern with the boat – a vibration/pounding issue – was not evident during that initial repair period.  After Plaintiffs brought this issue to Carver's attention, Plaintiffs refused to allow Carver to tender repair because they did not like the repair method proposed by Carver.  Plaintiffs cannot argue that Carver breached its express limited warranty, however, in the absence of giving Carver an

10

opportunity to cure this and any other warranted defects.  Thus, summary judgment must be granted to Carver on Plaintiffs' breach of warranty claim.

### C.    **Implied Warranty of Merchantability Claim**

Plaintiffs allege that Defendants breached the implied warranty of merchantability in connection with the sale of the boat to Plaintiffs.  U.C.C. § 2-316  provides that "[u]nless excluded or modified (Section 2-316) a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

### 1.    **SIBS and Curry**

The plain language of U.C.C. § 2-316 specifically allows contracting parties to "exclude or modify" the implied warranty of merchantability.  The statute provides in relevant part: "Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of writing must be conspicuous . . ."  U.C.C. § 2-316(2).

The implied warranty of merchantability was clearly excluded by the terms of the contract for the sale of the boat.  Specifically, paragraph 6 of the contract provided, in capitalized letters, the following disclaimer:

> DEALER MAKES NO WARRANTIES EXPRESS OR IMPLIED OF, IN AND TO ANY BOAT OR ITEM PURCHASED HEREUNDER AND NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE INTENDED. WARRANTY, IF ANY, OF ANY ITEM PURCHASED HEREUNDER SHALL BE SOLELY THE WARRANTY GIVEN BY THE MANUFACTURER ....

Purchase Agreement at ¶ 6.

The Court is satisfied that this waiver is valid.  In accordance with U.C.C. § 2-316, the disclaimer specifically mentions the word "merchantability" and is conspicuous.  U.C.C. § 1-201

(10) provides that "[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.  A printing heading in capitals . . . is conspicuous.  Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color."

Although the disclaimer appears on the back of the contract, it is in capital letters and clearly stands out from the lower case letters contained on the rest of the page.  *See, e.g., Maltz v. Union Carbide Chemicals & Plastics Co., Inc.*, 992 F.Supp. 286, 304 (S.D.N.Y. 1998) (holding that a warranty disclaimer printed in capitalized letters that specified the warranties that were being disclaimed was conspicuous); *Freemantle v. U.S. Hoffman Mach. Corp.*, 2 A.D.2d 634, 635 (N.Y. App. Div. 1965) (finding that a disclaimer of implied warranties on the back of the contract was sufficient).  Further, Plaintiff Delgaldo's signature is inserted immediately after the following language of the contract: "I have read the terms and conditions in the front and back of the agreement and accept them as part of the order."  *See* Purchase Agreement.  Thus, the Court finds that Plaintiffs were given proper notice of the disclaimer.

The Court rejects Plaintiffs' argument that the disclaimer violates the Magnuson-Moss Act.  In accordance with 15 U.S.C.A. § 2308(a), a supplier cannot disclaim or modify any implied warranty to a consumer if (1) the supplier has made a written warranty to the consumer; or (2) the supplier has entered into a service contract with the consumer.  Neither of these provisions are applicable in this case, however, as SIBS did not make any written warranty to Plaintiffs.  Nor did SIBS enter into a service contract with Plaintiffs.

The Court also rejects Plaintiffs' arguments that the warranty disclaimer conflicts with the SIBS website and the existence of SIBS's service department.  A company can certainly

12

advertise the existence of its service department without creating an obligation to provide warranties on its products.  Finally, the Court rejects Plaintiffs' argument that the warranty disclaimer is unconscionable, as the law clearly permits the disclaimers of warranties.  The Court observes that Plaintiffs are not left without any recourse regarding the boat's alleged defects, as Defendant Carver provided an express limited warranty to Plaintiffs, discussed in Section IV. B. *supra.*

        **2.**    **Carver**

The Court also grants summary judgment to Defendant Carver on this claim.  New York law provides that there is no implied warranty of merchantability in the absence of privity of contract.  *See Jaffee Assocs. Bilsco Auto Serv.,* 58 N.Y.2d 993, 995 (N.Y. 1983).  Here, there is no privity of contract between Carver and Plaintiffs.  Thus, Plaintiffs' claim that Carver breached the implied warranty of merchantability must be dismissed.  The Court also notes that Plaintiffs have not presented proof that Carver breached any warranty to Plaintiffs.  Absent proof of breach, Plaintiffs' implied warranty claim fails.  *See* Official Comment 13, U.C.C. § 2-314 (providing that in an action based on breach of warranty, it is necessary to show not only the existence of the warranty, but the fact that the warranty was broken).

       **D.**    <u>**Implied Warranty of Fitness for a Particular Purpose Claim**</u>

Plaintiffs allege that Defendants breached the implied warranty of fitness for a particular purpose in connection with the sale of the boat to Plaintiffs.  U.C.C. § 2-315  provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the

13

goods shall be fit for such purpose."

      **1.**      **SIBS and Curry**

      Plaintiffs allege that they informed SIBS and Curry of their desire to take the boat on ocean voyages and extended trips.  Plaintiffs argue that the boat is not suitable for such use, and therefore, Defendants SIBS and Curry breached the implied warranty of fitness for a particular purpose.

      The Court will dismiss this claim against SIBS and Curry.  Similarly to U.C.C. § 2-316, the plain language of § 2-315 specifically allows contracting parties to "exclude or modify" the implied warranty of fitness for a particular purpose.  In accordance with U.C.C. § 2-316, "to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."  The contract for the sale of the boat clearly excluded the implied warranty of fitness for a particular purpose.[4]  *See* Purchase Agreement at ¶ 6.  As explained above, the disclaimer is capitalized and clearly stands out from the lower case letters contained on the rest of the page.

      Even if the contract did not disclaim the implied warranty of fitness for a particular purpose, the Court finds no admissible evidence that SIBS or Curry breached the warranty. Plaintiffs' own expert, Burpee, who conducted a full stem to stern survey of the boat at Plaintiffs' request, testified at his deposition that if Plaintiffs allowed repairs to be made to the boat, the boat would be seaworthy and capable of ocean travel. Burpee dep. at 110.  Specifically, when

---

      [4]      The implied warranty of fitness for a particular purpose was excluded in the same paragraph of the contract as the implied warranty of merchantability.

asked if the boat could be taken on trips to Costa Rica and to the Bahamas,[5] Burpee answered in the affirmative.  Burpee dep. at 110.

### 2.      Carver

Carver argues that Plaintiffs' claim against it for breach of the implied warranty of fitness for a particular purpose must be dismissed because there is no evidence of the requisite reliance on Carver.  The Court agrees.  U.C.C. § 2-315 applies when the *"seller* at the time of contracting has reason to know any particular purpose for which the goods are required . . ."  U.C.C. § 2-315 (emphasis added).  *See also Saratoga Spa & Bath, Inc. v. Beeche Systems, Corp.*, 230 A.D.2d 326, 331 (N.Y. App. Div. 1997).  It is undisputed that Carver did not sell the boat to Plaintiffs and was not involved in the sales process.

The Court also rejects Plaintiffs' argument that Carver was SIBS' agent in connection with the sale of the boat.  Plaintiffs argue that agency is a question of fact for a jury to decide. However, as Carver correctly observes, there is simply nothing in the pleadings or the record in this case on which Plaintiffs may base their agency claim.  For example, the fact that SIBS sells Carver products and is authorized to provide warranty service on those products does not create or imply an agency relationship between Carver and SIBS in connection with the sale of the boat to Plaintiffs.

Therefore, the Court grants summary judgment to Carver on Plaintiffs' breach of the implied warranty of fitness for a particular purpose claim.

---

[5]       When Plaintiffs were considering purchasing the boat, they expressed their desire to Curry to take the boat to destinations including the Bahamas and Costa Rica.  *See* Deposition of Joseph Demorato at 37-38, attached to the Fanning cert. as Exhibit 22.

### E.   Magnuson-Moss Act

The "Consumer Product Warranty Act," 15 U.S.C. § 2301 *et seq.*, also known as the Manguson-Moss Act (the "Act"), provides for a federal cause of action for breach of implied warranty.  The Act defines implied warranty as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product."  15 U.S.C. § 2301(7).

Breach of warranty actions that fail under state law will also fail under the Magnuson-Moss Act.  *See In re Ford Motor Co. Ingition Switch Products Liability Litigation*, 19 F.Supp.2d 263 (D.N.J. 1998).  As explained above, Defendants are granted summary judgments dismissing Plaintiffs' state law implied warranties claims.  Therefore, Plaintiffs' federal claims under the Magnuson-Moss Act are dismissed as well.

### F.   Consumer Fraud Act Claim

Plaintiffs allege that SIBS and Carver engaged in various acts of consumer fraud in violation of N.J.S.A. 56:8-2.  Specifically, Plaintiffs allege that the Curry, SIBS, and Carver represented that the boat was suitable for ocean travel prior to its sale, but that in fact, it was not suitable for such travel.  Plaintiffs further allege that after the sale, SIBS and Carver denied that there were flaws with the boat, concealed the serious nature and extend of structural problems with the boat, and suggested repairs that would not correct or solve the problems, but instead would only mitigate them through warranty coverage.

Even assuming arguendo that the New Jersey Consumer Fraud Act is applicable notwithstanding the fact that New York substantive law applies to the contract and that the allegedly unconscionable commercial acts occurred in New York, Plaintiffs' claim under N.J.S.A. 56:8-2 fails.

The New Jersey Consumer Fraud Act bars fraud, suppression, or omission of a material fact in connection with the sale or advertisement of merchandise.  Its broad language evidences "legislative concern over sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practice."  *Daaleman v. ElizabethtownGas Co.*, 77 N.J. 267, 271 (1978).

Plaintiffs have failed to provide evidence to the Court that Defendants engaged in fraud or suppressed or omitted a material fact in connection with the sale of the boat.  First, with respect to Plaintiffs' claim that the boat was represented to them as being suitable for ocean travel, but was not in fact ocean worthy, Plaintiffs' own expert, Willard Burpee, testified at his deposition that if certain repairs were made to the boat, the boat could be used for ocean travel. *See* Burpee dep. at 110.  Moreover, as Defendants SIBS and Curry emphasize, the fact that certain warranty repairs were required after the sale of the boat and during the period by which it was used by Plaintiffs does not undermine the fact that the boat was seaworthy in its design and at the time of the sale.

Further, Plaintiffs' claims that Defendants concealed aspects of the warranty process or their proposed repair method are simply unsupported by the record.  On the contrary, regarding the most significant warranty issue, the bonding between the stringers and cabin/shower module sole, the repair method proposed by Plaintiffs' expert was the same repair method proposed by Carver.  *See* Burpee dep. at 21-22; Email from Mike Osmanski to DeMorato and Delgaldo, attached to the Fanning cert. as Exhibit 14.  Therefore, Plaintiffs' claims are insufficient to withstand summary judgment.

17

### G.   Punitive Damages Claim

Plaintiffs claim that they are entitled to punitive damages under N.J.S.A. 2A:15-5.12.  In order to obtain punitive damages under N.J.S.A. 2A:15-5.12, a party must show evidence of "actual malice" or  "wanton and willful disregard" of a person who might be harmed by the defendant's acts or omissions.  *Dong v. Alape,* 361 N.J.Super. 106, 116-17 (App. Div. 2003).  Even if the Court were to apply New Jersey law to Plaintiffs' claims, punitive damages clearly would not be warranted in this case.  Plaintiffs have not shown any evidence of "actual malice" or "wanton and willful disregard" on the part of Defendants.

Plaintiffs also are not entitled to punitive damages under New York law.  New York does not have a statute that provides for punitive damages.  Instead, New York follows the common law and only grants punitive damages if a plaintiff alleges and shows that the defendant engaged in fraud aimed at the public, that is gross and involves a high moral culpability.  *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (N.Y. 1961).  Plaintiffs have clearly not alleged or provided any evidence that indicates that Defendants engaged in such conduct in this case.

### H.   Negligence Claims

Plaintiffs allege that Defendants failed to exercise reasonable care in the design, marketing, inspection, and manufacture of the boat.  (Compl. ¶ 34).  Plaintiffs further allege that Defendants negligently misrepresented and misstated material facts in the initial sale of the boat and the course of the parties' dealings.  (Compl. ¶ 35).

Plaintiffs' negligence claims must be dismissed, as they are barred under New York's

economic loss doctrine.[6]  In accordance with this doctrine, a consumer who purchased a product cannot sue under a negligence theory for the alleged economic loss it sustained for an alleged product defect.  *See Weiss v. Polymer Plastics Corporation*, 21 A.D.3d 1095, 1096  (N.Y. App. Div. 2005).

Here, the damages Plaintiffs have alleged are purely pecuniary in nature and are wholly related to the subject matter of the contract for the sale of the boat.  Under the economic loss doctrine, a claim for negligence is therefore inappropriate.  Accordingly, Plaintiffs' negligence claims must be dismissed.

## V.    Conclusion

For the reasons set forth above, the Court grants Defendants' motions for summary judgment.  An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: May 16, 2007

---

[6]       The Court notes that New Jersey similarly bars action for negligence if the only economic loss suffered is a diminution of the value of the item sold.  *See Alloway v. General Marine Industries, L.P.*, 149 N.J. 620 (1997); *Flowers v. Viking Yacht Co.*, 366 N.J. Super 49 (Law Div. 2003).